UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERNICI CALDART, S.R.L.,<br><br>Plaintiff,<br><br>v.<br><br>PROLINK MATERIALS, LLC,<br><br>Defendant. | Case No.: 23-cv-01629-AJB-AHG<br><br>**ORDER REQUIRING PLAINTIFF FILE A SUPPLEMENT TO ITS MOTION FOR DEFAULT JUDGMENT** |

Before the Court is Plaintiff Vernici Caldart, S.R.L.'s ("Plaintiff") Motion for Default Judgment against Defendant Prolink Materials LLC ("Defendant"). (Doc. No. 19.) Plaintiff seeks recognition and enforcement of a December 5, 2022 Italian Order of Payment it obtained against Defendant in the Court of Monza in Italy (the "Italian Judgment"). (Doc. No. 19-1 at 6.) Pursuant to California's Uniform Foreign-Country Money Judgments Recognition Act (the "Uniform Act"), Cal. Civ. Proc. Code §§ 1713, et seq., and the principles of international comity, Plaintiff seeks to recover the amounts ordered against Defendant in the Italian Judgment, comprising a principal amount of "€319,294.64, plus interests accrued starting from the due date until the complete amount is paid up, the costs of the filing of the Appeal, €4,185.00 for attorneys' fees, and the out-of-pocket costs of €634.00[.]" (Doc. No. 14, "FAC," ¶¶ 7, 28–37.)

## I. BACKGROUND

Plaintiff, a company organized under the laws of Italy with its principal place of business in Bellusco, Italy, manufactures and distributes high-tech industrial paints and enamels. (FAC ¶¶ 1, 5.) Defendant is a Virginia limited liability company, registered to do business in California, and with a principal places of business in Vienna, Virginia and Poway, California. (*Id.* ¶ 2.) Defendant's business consists of manufacturing and distributing high performance coatings for composites, plastics, and metals. (*Id.* ¶ 6.)

Plaintiff and Defendant entered into a sale of goods contract whereby Plaintiff provided Defendant with product in exchange for Defendant's payment pursuant to nineteen invoices Plaintiff issued to Defendant between May 18, 2018, and February 6, 2020. (*Id.* ¶¶ 7, 9.) Combined, these invoices amount to €347,973.64. (*Id.* ¶ 9.)

When Defendant failed to pay the invoices, Plaintiff repeatedly demanded payment from Defendant, and Defendant responded by acknowledging its failure to pay and requesting a payment plan on two occasions: August 28, 2020, and October 8, 2020. (*Id.* ¶¶ 10–13.) Between November 21, 2021 and April 8, 2022, Defendant continued to promise it would make payment. (*Id.* ¶ 15.) On April 8, 2022, Defendant arranged a payment of $31,145.00 (€28,676.00), which it inadvertently sent to a third party. (*Id.* ¶ 16.) Plaintiff never received this payment but nonetheless applied the value to the amount owed, decreasing the amount owed to €319,297.64. (*Id.* ¶ 17.) Plaintiff received no further payments and is not aware of any further attempts at payment. (*Id.* ¶ 18.)

On September 22, 2022, Plaintiff filed an Appeal for an Order of Payment (alleged to be the equivalent of an American complaint) against Defendant before the Court of Monza. (*Id.* ¶ 19.) On December 5, 2022, the Court of Monza issued the Italian Judgment against Defendant "in the amount of €319,294.64, plus interests accrued starting from the due date until the complete amount is paid up, the costs of the filing of the Appeal, €4,185.00 for attorneys' fees, the out-of-pocket costs of €634.00, as well as other amounts." (*Id.* ¶ 23.)

On September 5, 2023, Plaintiff filed the Complaint in this action to recognize and

domesticate the Italian Judgment. (Doc. No. 1.) After Defendant failed to appear or otherwise respond, the Clerk entered default at Plaintiff's request. (Doc. Nos. 6; 7.) On December 13, 2023, Plaintiff filed a motion for default judgment (Doc. No. 8), which the Court denied on June 21, 2024, due to a lack of subject matter jurisdiction (Doc. No. 13). On June 27, 2024, Plaintiff filed an amended complaint and served Defendant via the California Secretary of State on July 2, 2024. (Doc. Nos. 14; 15.)

When Defendant failed to appear or otherwise timely respond to the amended complaint, Plaintiff requested an entry of default against Defendant on July 29, 2024. (Doc. No. 17.) Due to Defendant's failure to defend, the Clerk of Court entered default on July 30, 2024. (Doc. No. 18.) On August 27, 2024, Plaintiff filed the instant motion for default judgment. (Doc. No. 19.)

## II.  LEGAL STANDARDS

### A.  Rule 55

Rule 55 of the Federal Rule of Civil Procedure permits a court, following default by a defendant, to enter default judgment in a case. Fed. R. Civ. P. 55(b)(2). "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In making this determination, the Court considers "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits" (the "*Eitel* factors"). *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). In evaluating these factors, the well-pleaded factual allegations of the complaint, except those relating to the amount of damages, are taken as true. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987).

///
///
///

### B. California's Uniform Act

"In international diversity cases such as this one, 'enforceability of judgments of courts of other countries is generally governed by the law of the state in which enforcement is sought.'" *De Fontbrune v. Wofsy*, 39 F.4th 1214, 1221 (9th Cir. 2022), *cert. denied sub nom. Wofsy v. Sicre de Fontbrune*, 143 S. Ct. 1084, 215 L. Ed. 2d 395 (2023) (quoting *Naoko Ohno v. Yuko Yasuma*, 723 F.3d 984, 990 (9th Cir. 2013)). "California's Uniform Act provides that the courts of California 'shall recognize a foreign-country judgment' for money damages that is final, conclusive, and enforceable where rendered, except if one or more of the mandatory grounds for non-recognition enumerated in § 1716(b), or discretionary grounds for non-recognition enumerated in § 1716(c), applies." *Naoko Ohno*, 723 F.3d at 991. "A party seeking recognition of a foreign-country judgment has the burden of establishing that the foreign-country judgment is entitled to recognition[.]" Cal. Civ. Proc. Code § 1715(c). Once coverage under the Uniform Act is established, the presumption in favor of enforcement applies, and the "party resisting recognition of a foreign-country judgment has the burden of establishing that a ground for nonrecognition stated in subdivision (b), (c), or (d) exists." Cal. Civ. Proc. Code § 1716(e); *see also Ohno*, 723 F.3d at 991. Pursuant to § 1716(b), a court must not recognize a foreign-country judgment if the rendering judicial system "does not provide impartial tribunals or procedures compatible with the requirements of due process of law," lacked personal jurisdiction over the defendant, or lacked subject matter jurisdiction. Cal. Civ. Proc. Code § 1716(b)(1)–(3).

## III. DISCUSSION

Due to the procedural posture of this case, the record before the Court is only that which Plaintiff has provided. However, the Court identifies the following areas where supplementation by Plaintiff is required.

///

///

///

### A. The Court of Monza's Jurisdiction

Having reviewed the record before it, the Court has concerns regarding the Court of Monza's jurisdiction. *See* Cal. Civ. Proc. Code § 1716(b)(2)–(3).[1]

#### 1. Plaintiff's Allegations

Plaintiff alleges that the Court of Monza had jurisdiction pursuant to Article 5 of the 1968 Brussels Convention, Article 3 of Italian Law 218/1995, and Article 57 of the 1980 Vienna Convention. (FAC ¶ 20.) Pursuant to Article 5 of the 1968 Brussels Convention, as incorporated by Article 3 of Italian Law 218/1995, jurisdiction "in matters relating to a contract" is proper "in the courts for the place of performance of the obligation in question." *See* Convention on Jurisdiction and the Enforcement of Judgments in Civil and Commercial Matters of Sept. 27, 1968, 1978 O.J. (L 304) 21; legge 31 maggio 1995, n.218, in G.U. June 3, 1995, n.128 (It.). Article 57 of the United Nations Convention on Contracts for the International Sale of Goods provides that:

> If the buyer is not bound to pay the price at any other particular place, he must pay it to the seller:
> (a) at the seller's place of business; or
> (b) if the payment is to be made against the handing over of the goods or of documents, at the place where the handing over takes place.

U.N. COMM'N INT'L TRADE L., CONVENTION ON CONTRACTS FOR THE INTERNATIONAL SALE OF GOODS, at art. 57, U.N. Sales No. E.10.V.14 (2010).

Plaintiff does not parse between subject matter and personal jurisdiction although they are distinct requirements.

---

[1] The Court acknowledges that the burden to establish whether any ground for nonrecognition exists falls to the party opposing enforcement. *See* Cal. Civ. Proc. Code § 1716(e). However, considering the procedural posture of the instant motion and the inquiry required by the second and third *Eitel* factors, the Court will analyze the record for any evidence that grounds for non-recognition exist to ensure that enforcement of the Italian Judgment does not violate Due Process and is not otherwise repugnant to the public policy of California or of the United States as a whole. *See Eitel*, 782 F.2d at 1471 (identifying that a court must evaluate the merits of a plaintiff's substantive claim and the sufficiency of the complaint in determining whether to grant a motion for default judgment); *see also* Cal. Civ. Proc. Code § 1716(c)(1)(C).

### 2. Subject Matter Jurisdiction

First, Plaintiff did not provide the Court with the contract at issue to evaluate whether Plaintiff's assertions regarding jurisdiction are valid.

### 3. Personal Jurisdiction over Defendant

Second, the Court has concerns about whether the Court of Monza had personal jurisdiction over Defendant under both Italian law and California law. Pursuant to California's Uniform Act, a foreign court lacks personal jurisdiction over a defendant if either "(1) [t]he foreign court lacks a basis for exercising personal jurisdiction that would be sufficient according to the standards governing personal jurisdiction in this state," or "(2) [t]he foreign court lacks personal jurisdiction under its own law." Cal. Civ. Proc. Code § 1717(a)(1)–(2).

"The Due Process Clause of the Fourteenth Amendment sets the outer boundaries of a state tribunal's authority to proceed against a defendant." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011); *see also Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) ("California's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution."). To comport with the Fourteenth Amendment, "a State may authorize its courts to exercise personal jurisdiction over an out-of-state defendant if the defendant has 'certain minimum contacts with [the State] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Id.* at 126 (quoting *Goodyear*, 564 U.S. at 923).

Despite Plaintiff's cursory reference to Article 57 of the Convention on Contracts, the United States Supreme Court "long ago rejected the notion that personal jurisdiction might turn on mechanical tests or on conceptualistic theories of the place of contracting or of performance." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478–79 (1985) (internal punctuation and citations omitted). Accordingly, "[r]ather than looking to the place of performance, [this] Court [must] look[] to the business reality behind the particular contract at issue." *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972

F.3d 1101, 1108 (9th Cir. 2020). In this Circuit, courts employ a three-prong test for analyzing a claim of specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 802 (9th Cir. 2004); *see also Ziegler v. Indian River Cnty.*, 64 F.3d 470, 475 (9th Cir. 1995) (detailing the seven factors the court considers when evaluating reasonableness).

Moreover, Plaintiff proffers no argument nor evidence to support any of grounds for personal jurisdiction set forth in § 1717(b) of the Uniform Act. Specifically, no evidence suggests that Defendant was personally served in Italy, voluntarily appeared in the proceedings before the Court of Monza, was domiciled in Italy, or had its principal place of business, a business office, or was organized under the laws of Italy. *See* Cal. Civ. Proc. Code § 1717(b)(1), (2), (4), (5). In fact, all evidence is to the contrary. Additionally, there is no evidence, nor does Plaintiff allege, that Defendant agreed prior to the commencement of the proceeding to submit to Italian jurisdiction. *See* Cal. Civ. Proc. Code § 1717(b)(3). Finally, this case does not involve Defendant's operation of a vehicle in Italy. *See* Cal. Civ. Proc. Code § 1717(b)(6).

### 4. Supplementation Required

Accordingly, the Court **ORDERS** Plaintiff to file a supplement addressing the identified deficits in the record regarding the Court of Monza's jurisdiction.

///

///

**B.     Miscellaneous Issues**

In addition, the Court identifies the following two issues that Plaintiff should address in its supplement.

First, Plaintiff does not request the Court enforce the Italian Judgment's order regarding "lump-sum reimbursement for overhead expenses in the amount of 15%, social security contributions and VAT as per law." (FAC Ex. B Ex. C at 27–28.) Plaintiff does not address this aspect of the Italian Judgment in either the amended complaint or the instant motion for entry of default.

Second, attached to the amended complaint, Plaintiff provides what appears to be only the first page of an "Application for Correction of a Clerical Error," stating that, due to Defendant's identity as a U.S. corporation, the time limit should be sixty days. (FAC Ex. B. at 25.) Plaintiff failed to provide the entirety of this document, or any revised order issued by the Court of Monza.

## IV.    CONCLUSION

For the reasons stated above, the Court **ORDERS** Plaintiff file a supplement no later than **December 9, 2024**, that includes:

- A supplemental brief, **not to exceed five (5) pages**, exclusive exhibits, providing any relevant statutes, treaties, conventions, and case law that establish (1) the contours of personal jurisdiction in Italy applicable to this Defendant and (2) how that compares to personal jurisdiction requirements in the State of California;
- All documentation and filings Plaintiff provided to the Court of Monza in the Italian action with certified English translations; and
- A supporting declaration attesting to the identity and validity of each exhibit.

Plaintiff is further **ORDERED** to serve both this Order and its supplement on Defendant by way of the California Secretary of State.

///

///

In light of the need for this supplement, the Court **RESETS** the hearing on Plaintiff's motion for default judgment (Doc. No. 19) to **3:00 PM** on **December 19, 2024**, in Courtroom 4A before the undersigned.

**IT IS SO ORDERED.**

Dated: November 26, 2024

Hon. Anthony J. Battaglia
United States District Judge